Mr. Milios, when you're ready, you may proceed. I want to thank you as well for your willingness to serve on the CJA panel. It's very important to the Court and, more importantly, essential to our system of justice, so thank you. You're welcome, Your Honor. Good morning. May it please the Court. I'm Mike Milios. I represent the appellant, Mr. Ronald Jackson. I intend to focus my argument on Issue 1, the jury trial waiver issue. I am, however, prepared to answer any questions on the Issue 2 that was briefed, the 404B issue. As to Issue 1, Mr. Jackson's waiver of the jury trial was not knowing and intelligent. And in the alternative, under the unique circumstances of this case, if the Court does find that the waiver was knowing and intelligent, his waiver withdrawal was timely. At the pretrial conference, Mr. Jackson waived his right to the jury. The judge did cover the standard Rule 23, call equity with Mr. Jackson, letting Mr. Jackson know what it meant, what he was waiving and how the jury would consist and the process the jury would undertake. And during that time, Mr. Jackson did execute a written waiver. But it's important to note on Mr. Jackson's waiver that he did add without prejudice above his signature. But given the nature of his general defense of name, because he believed that his name was copyrighted or trademarked or some other thing, some kind of nonsense that the sovereign citizen type people are always raising. They sign everything without prejudice or they sign them all under objection. You've got this person who fits this whole group of sequela of attributes that we see on these people who are of this mindset. And, you know, so are we really supposed to read into this without prejudice that somehow he's really not signing the waiver? Yes, Your Honor, because it's something that was put on the waiver and it's something that, you know, when we're talking about something as important as constitutional rights. But his rights were explained to him. He understood what he was giving up. I mean, I mean, this is a non-starter for me because I frankly think that given, I mean, if you look at how he signed everything through the course of this thing, if you look at his course of conduct in defending himself, I mean, what is this judge supposed to do? What more could this judge have done than the judge did? Well, I do want to distinguish Mr. Jackson's conduct a little bit from the co-defendant. I tried to parse through that when I received the record. I do not believe that Mr. Jackson was trying to play any games. I think he was respectful with the court. Yes, there were many objections filed, but Mr. Jackson was respectful to the court. He acknowledged how difficult this decision was and how he had been waiting to go for trial because the trial had been continued because of COVID, not through anything by Mr. Jackson because this was 2020. There seems to be actual confusion because Mr. Jackson, in other cases where we have- Well, he's utterly incompetent to operate pro se. Let's just face it. This judge had the patience of Job. You know, I mean, at every stage in this, I mean, I'm looking at this poor trial judge. I'm asking, what exactly am I supposed to do? I mean, I can't even enunciate some kind of rule that I'm supposed to tell this judge and say, you've got this wrong. Exactly how and why? You tell me. How did the judge- What are we supposed to tell this judge to do when they're confronted with this difficult, obsteperous client who does not understand the law, who has a belief on a common law in certain, you know, subcultures in the United States? Just what exactly is that judge supposed to do? I agree that the judge was patient, but here we actually have confusion as to the waiver. There was something written on a waiver document that the judge did not cover with Mr. Jackson, and then that confusion becomes apparent on the first day of trial where Mr. Jackson says, I disagree with some of the rulings. I would like to have my case heard by the jury. Yeah. Now, and the big claim there is that the judge never said that, well, if you're going to change your mind, you have to do so on a timely basis, right? Isn't that just one of the risks that you run when you decide to be pro se? Because you're supposed to understand the rules. You're supposed to understand the procedure. The judge isn't supposed to have a separate set of rules they apply just because you're a difficult pro se person. I don't believe so, Your Honor. The court had the opportunity there when there was something written on the waiver to clarify with whatever that meant, and then there was confusion that showed up because the jury trial waiver happened at the pretrial conference just 11 days before. So it wasn't as if Mr. Jackson just waited around. At the next court appearance, he did say, Your Honor, I would like to withdraw the jury trial waiver. Here are my reasons. Do you have a single case anywhere in the world where on the day of trial, somebody said, I want to withdraw my waiver of a bench trial that's been granted? I do not have a case. I just have language that says there isn't a precise deadline. There is no precise deadline. I get that. But really, are we going to enunciate a rule where you show up on the morning of trial and say, oh my gosh, I think I want a jury trial, even though I told you last week I don't want a jury trial? No, Your Honor. I want the court to look at the unique circumstances of this case and say that there was confusion about the jury trial waiver. At the next court appearance, Mr. Jackson let the case heard by a jury. No, I think the court... I mean, he had communicated with the court by telephone and other methods, right? I mean, he obviously knew how to get a hold of the judge, and he could have done that before the morning of trial. Isn't that what the record shows? There was. The judge did make those findings that both the defendants could have notified. What were the reasons that he gave the morning of trial for wanting to go back to the jury? That he disagreed with the way things were going under the judge? Yes, Your Honor. He said he felt like the judge was biased. You know, on the front end, I kind of share what Judge Erickson is saying. I'm trying to figure out what I would have done in that situation, which is she got a written waiver. She told him all his rights and said, are you really, really, really sure about this? And he was like, yes. And so she really had, I don't know, I guess there's three options here. One is she could have said, did what she did and say, you've waived your jury trial. Two is I suppose she could have said, you really, really, really, really, really mean it and brought him back later. I suppose that could have happened. Or she could have forced him to have a jury trial. If she forced him to have a jury trial, I think that would have been air. You'd be up here saying, well, the judge can't force somebody to have a jury trial. So really, it comes down to two, I think, which is you really should have done a little bit more. And I'm just not sure that there's precedent for that. Is there? No, Your Honor. I think what the judge could have done is if the continuance was needed, the judge could have granted the continuance and reconvened the jury. I understand the judge released the jury, but the judge could have granted a continuance. And understanding that it would have been a, it potentially could have been a disruption, but the judge could have honored Mr. Jackson's request. So the rule you really want us to write is that the judge needs to, when something like this happens, maybe the judge just can't rely on what the defendant says. The judge should maybe bring the defendant back and check in with the defendant a day or two later to make sure he or she still wants to do the same thing. No, Your Honor. I think in the circumstances of this case, there was confusion both on the waiver and there was no, Mr. Jackson didn't know there was a timeliness requirement. And so under the unique circumstances of this case, the continuance would have been appropriate. Did he ask for a continuance at that point? No, he didn't. He just asked for a jury trial. Is that a problem, do you think? I mean, usually we don't normally see judges say, okay, I'm sua sponte, granting a continuance. We certainly don't say that's erroneous not to. No, I think it would have been inappropriate for him to object to a continuance if the judge said, all right, well, we'll need to continue this so that we can recall the jurors. But, no, I think it would have been entirely appropriate for the judge to issue the continuance to reconvene the members. I'm cutting into my rebuttal time, but I'm glad to answer any further questions. Seeing none, thank you. Mr. Melios? May it please the Court, my name is Justin Wesley and I represent the United States. I'm sorry, I can't read. Understood, Your Honor. No offense taken. So the core issue here is whether the defendant was sufficiently informed of his right to a jury trial so that he could knowingly, intelligently, and voluntarily waive it. And through Mr. Jackson's brief and even here today, it doesn't appear to be that he wasn't sufficiently informed. He's saying that, well, he had some confusion or he should have been advised that any waiver had to be timely. The requirement to waive any right, whether it's a jury trial, whether to plead guilty, waive your right to counsel, the requirement is that a person be sufficiently informed of what that right is, what that right entails, so that a person can know what they're giving up and know what the consequences are. There is no right to a bench trial. There is no right to withdraw a jury trial waiver once it is waived. So to add a particular requirement, as Mr. Jackson seems to ask for it in his brief at least, that people be advised that they must make their waiver in a timely manner, it is nonsensical because they don't have a right to withdraw it. Looking at the facts of this very particular case, there was a lengthy colloquy, not only about the right to represent himself, which touches on the right to a jury trial and what that is, but there was also the lengthy colloquy about the request 11 days before trial to withdraw the jury trial waiver. I agree with the Court that the district court judge was extremely patient, extremely respectful, and she did absolutely everything she could do to apply Eighth Circuit law, because not only did she go over the four Williams factors, which is to be expected, it was done orally, it was done in writing, but she talked about how important the jury trial right was. She told the defendants, both Mr. Jackson and Mr. Graham in this case, how difficult it was even to get this court to a jury trial and that there were many jurors involved. There's risk of COVID during this time to everyone, there's questionnaires that are sent out, there's witnesses that are being flown in, and she discussed all these things. And there really couldn't be a more complete and thorough record of advising someone what their right to a jury trial is before someone waived that right like Mr. Jackson did. And we agree with counsel in their recent filing this week that the actual waiver of the right to the jury trial, the standard of review there is de novo. However, the factual findings that made by the district court judge are given great deference and it's reviewed for clear error. So when this court reviews the record and sees the Williams factors, the defendant was told what a jury trial is, went over Williams multiple times, and then there was the signature in writing. The judge fulfilled her duty in advising the defendant of what his rights were, and then he knowingly, intelligently, and voluntarily waived his rights. And the finding that he did that should be given great deference because she was the one that was there and had been dealing with Mr. Jackson and talking with him and communicating with him and determining if he really understood, truly understood, the right that he was giving up. What's the standard of review here? On the one hand, we have a constitutional right, which would suggest de novo. On the other hand, we have something, like you said, where the district court was there observing him, which would suggest abusive discretion. I think it's clear from Williams. I do agree that the determining whether any particular defendant validly waived their right under the law is reviewed de novo. But when the Eighth Circuit is reviewing the specific facts of the case and what the factual findings were, those facts are to be given great deference. And then... There are, of course, a series of old cases from other applied abuse of discretion as a standard of review. We have historically applied abuse of discretion as the standard of review for a denial of a motion to waive the jury, right? And so, why should... I guess, I mean, there's this argument about the constitutional nature and it ought to be de novo. But there's body of law out there that says that it's an abusive discretion standard. I am agreeing to what the defense filed earlier this week, essentially based on Williams. There's a few things in there that give me pause to say definitively what it is. But from reading Williams, reading all the cases, it seems to be that it is great deference and Of course, if the court finds that that's not the appropriate standard of review and goes with the other cases, I'm in no position to dispute that. It's just from my reading of the most recent Williams case and how this case went along that I am putting before the court that I am agreeing that that is the appropriate standard of review here. Got it. Thank you. Can I ask you about the Rule 404B? You know, I have noticed that I think district judges and counsel are very confused about the categories in Rule 404B. And so, what the judge in this case did was say, I think it fits almost every category. I think it's plan. I think it's identity. I think it's intent. And that just can't be the case. These are mutually exclusive categories, in many cases, at least in common law. And so, I think that probably it's admissible under our case law, but I actually want to know what the right category is. And so, I want to hear from the Remember, this was a cell phone. He had kidnapped a cell phone store manager to get cell phones, and the district court admitted the conviction. Right. So, I was actually the prosecutor at trial, so I do have the sort of background information about it. And to just sort of frame the answer is that we didn't know what the defense was going to be. As Your Honor noted, it was these defendants pleading the Fifth to calling them, asking them anything, and then objecting to referring them by defendant, sir, Mr. Jackson, Mr. Graham, whatever it was. So, we really had no idea what the defense was going to be. However, in prior cases, there had been this defense of, well, one of the employees was in on the Hobbs Act robbery, and therefore, that negates an element of the offense and what they were doing. And so, we were thinking about this, and we put it forth, and this is in the If they deny it generally, it does go to their intent, what they were trying to do. Because it was important to the government that they had done this once, not just on their own, but they had done it together. And then we also had the issue that there was one BB gun and one real firearm, and there was a 924C charge to show that they were working together, aiding and abetting liability. We felt it was important to show the relationship of the offense beforehand as well, that they knew what each other would do when it was a planned circumstance like this, when they have this scheme to rob cell phone stores. Because the last one was throwing the manager in a trunk in order to bring him to the store and then get the cell phones. Did I hear, do I draw from that that your claim is that we're looking at intent and plan? Yes. That was primarily, and it's my subjective view, but it was also in the record for why we even put forth the 404B. And that has been a problem. I mean, I think as a trial judge that you really do have an obligation to say, why are you offering this? You tell me which one? Because, you know, I mean, the third one that is possible is identity because the plans are similar enough that you could have said, yep, these go to the weight of that we've got the right guys and this is their plan, a common scheme or plan, identity, intent. Those are all three issues that may fit. The problem with the identity one, is usually, at least at common law, and actually our case law in the 90s, we deviated, and I've sort of traced this back, was about a signature. That there was some signature that you were able to, and we've kind of, I don't know, we've kind of drifted away from that. But I don't get the sense that you're arguing that this is some sort of signature crime that only these two characters could have committed. No. And just going back, that was put forth as well because we don't know what they're going to say. They could have said, yeah, we got caught red-handed with all this stuff, but we just dropped some guys off at the cell phone store. We had no idea what they were going to do, and they left their wigs and disguises and the guns behind. So it's intent and plan. So it's intent and plan, yes. Got it. So, and then I would also add for the court that this was a bench trial, so DNRB, I believe it is, it greatly reduces any prejudice to the defendant because we know that a district court is much more likely and probably 100 percent, in fact, going to apply it in the appropriate way and not use it for profanity. You know, we'd feel much more confident if they just didn't read the rule back to us when they said they were taking the evidence in. You know, if they said, I'm going to consider it only for plan, period, right? I mean, then we'd be able to weigh it, but that's not your problem. The point is well taken, Your Honor, because we know as prosecutors we're supposed to put forth the specific exception. We're not just supposed to blanket it. And so I do believe if you read the record, we did try to do that. And just in the multiple ones put forth instead of just one, there was difficulty in determining what the defense may be under all the circumstances of the case. I do want, I do want, oh, I'm sorry, I see that my time is up. Unless there are any other questions, I'll go. Mr. Milios, I filibustered your first argument in a rather rude way, so I'll give you an additional minute to do it. So you'll have a minute. Two minutes if you prefer, if that's easier on the clock. Two minutes. Two is fine. Your Honor. I promise to be less rude. Thanks, sir. Thank you, Your Honor. Just coming back to the jury trial waiver, as Mr. Wesley noted and highlighted, and as did the trial judge, the importance of the jury trial. Here, you know, there was an opportunity to address the confusion and, if needed, or if necessary, recall the jurors. In terms of, because the question was asked on the 404B issue, yeah, that is what Mr. Jackson wanted, or puts forth, is that there wasn't the specific determinations made in the findings, in fact, and conclusions of law as to how exactly this applied to him. And under these circumstances, you know, we argued the fourth prong, you know, doing a 403 balancing test, that it was inappropriate to apply this prior misconduct to Mr. Jackson. Subject to the Court's questions. I see none. So thank you very much for your time.